IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **EVERLIDIS BONILLA, Individually and as Personal Representative for the ESTATE OF JUAN BONILLA, JR.** | : : : | |
| **Plaintiff** | : : | **Civil No. 1:14-CV-2238** |
| | : | |
| **v.** | : : | |
| | : | |
| **THE CITY OF YORK, PENNSYLVANIA, YORK CITY POLICE DEPARTMENT, OFFICER CHRISTOPHER ROOSEN, WEST MANCHESTER TOWNSHIP, WEST MANCHESTER TOWNSHIP POLICE DEPARTMENT, and OFFICER MICHAEL JORDAN** | : : : : : : : : | |
| **Defendants** | : : | **Judge Sylvia H. Rambo** |

**M E M O R A N D U M**

In this Section 1983 civil rights action, Plaintiff brings claims both individually and on behalf of the estate of her deceased son against two police officers and their respective police departments and municipalities, asserting violations of the decedent's rights protected by the Fourth Amendment, as well as pendent state law claims. Plaintiff alleges that the two police officers used excessive force by fatally shooting the decedent in response to a shootout that he was involved in outside of a nightclub. Presently before the court are two motions to dismiss, wherein Defendants allege that Plaintiff has failed to state a valid Section 1983 claim. For the reasons stated herein, the motions to dismiss will be granted in part and denied in part.

## I.        Background

"As a general matter, a district court ruling on a motion to dismiss may not consider matters extraneous to the pleadings." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997).  Thus, for the purposes of the motion *sub judice*, the court only considers the allegations contained in the complaint (Doc. 1), and will accept as true all well-pleaded factual allegations contained therein.  *See Trump Hotels & Casino Resorts, Inc. v. Mirage Resorts, Inc.*, 140 F.3d 478, 483 (3d Cir. 1998) (citing *Warth v. Seldin*, 422 U.S. 490, 501 (1975)).

### A.    Facts

On or about November 24, 2012, Plaintiff's son, Juan Bonilla, Jr. ("Bonilla"), went to a private nightclub known as "Ada's," where he became involved in a dispute that arose among some patrons.  (*Id.* at ¶¶ 12-14.)  During the course of the dispute, gunshots were fired inside Ada's, causing Bonilla and the other patrons to exit the club.  (*Id.* at ¶ 14.)  The dispute continued outside of the club and Bonilla fired multiple gunshots at an individual named James Fudge while moving south toward the parking lot of Royers Flower Shop.  (*Id.* at ¶¶ 15-16.)

Defendants Officer Christopher Roosen ("Officer Roosen") of the York City Police Department and Officer Michael Jordan ("Officer Jordan") of the West Manchester Township Police Department responded to the reports of gunshots at Ada's.  (*Id.* at ¶ 17.)  Officer Roosen arrived first on the scene, followed shortly thereafter by Officer Jordan and other officers from the York City Police Department.  (*Id.* at ¶ 19.)  As Bonilla moved closer toward Royers Flower Shop, Officer Roosen took a position behind Bonilla and Officer Jordan took a position near his police vehicle to Bonilla's front and left.  (*Id.* at ¶¶ 20-22.)  Bonilla

continued firing shots in the direction of Route 30 and both Officer Roosen and Officer Jordan fired upon Bonilla in order to stop him from continuing to fire his weapon. (*Id*. at ¶¶ 22-24.)

During the exchange of gunfire, Bonilla was struck by a bullet in his left thigh, at which point he dropped his gun and began hobbling toward Officer Jordan. (*Id.* at ¶ 25-26.) Bonilla traveled approximately sixty-five feet and fell to one knee on a grassy median, approximately ten to fifteen feet from Officer Jordan. (*Id*. at ¶¶ 27, 29, 32.) Bonilla raised his hands in the air and asked, "yo,yo, really?" before collapsing face down on the median. (*Id*. at ¶ 28.) While lying face down, Bonilla attempted to roll onto his side, at which point Officer Jordan fired a shot at Bonilla's chest. (*Id*. at ¶ 30.) Bonilla died from a gunshot wound that entered his body in approximately the middle of his back and pierced his heart. (*Id*. at ¶ 31.) The Pennsylvania State Police Laboratory was unable to determine whether the fatal shot had been fired from the gun of Officer Roosen or that of Officer Jordan. (*Id*.)

### B.   <u>Procedural History</u>

Bonilla's mother, Everlidis Bonilla ("Plaintiff"), initiated this action by filing a complaint on November 21, 2014. (Doc. 1.) In her complaint, Plaintiff asserted several constitutional claims pursuant to 42 U.S.C. § 1983, and named six defendants, including Officers Roosen and Jordan, and their respective police departments and municipalities. (*Id*.) Relevant to the instant motion, Plaintiff claimed, *inter alia*, that the use of excessive force by either Officer Roosen, or, alternatively, Officer Jordan, in fatally shooting Plaintiff's son constituted an unlawful seizure in violation of the Fourth Amendment (*id*. at ¶¶ 41-43, 49-51), and constituted assault, battery and wrongful death under Pennsylvania state law (*id*. at

¶¶ 52-65).[1]  Plaintiff further claimed that Defendants City of York, York City Police Department, West Manchester Township and West Manchester Township Police Department (collectively, the "Municipal Defendants") are liable for failure to train the officers properly in the use of deadly force.  (*Id*. at ¶¶ 36-40 and 44-48.)

On February 2, 2015, Defendants Officer Jordan, West Manchester Township and West Manchester Township Police Department (collectively, the "West Manchester Defendants") jointly filed a motion to dismiss the claims asserted against them for failure to state a claim upon which relief can be granted (Doc. 18), and on February 3, 2015, filed a brief in support thereof (Doc. 19).  As the basis for their motion, the West Manchester Defendants argued that Plaintiff failed to state a claim upon which relief can be granted.  (Doc. 18.)  The West Manchester Defendants argue in support of their motion as it pertains to the West Manchester Township Police Department that a police department is not a proper defendant in a civil rights action and therefore all federal claims against it must be dismissed.  (*Id*. at ¶ 4.)  With regard to the claims against Officer Jordan, the West Manchester Defendants argue that Officer Jordan's use of deadly force in response to Bonilla's repeatedly firing a gun in a crowded public place was objectively reasonable and not excessive, and, therefore, he cannot be held liable for committing an unlawful seizure or assault and battery as a matter of law.  (*Id*. at ¶ 5, 8.)  The West Manchester Defendants further argue that the wrongful death and survival claims must also be dismissed because they are derivative of the assault and battery claims.  (*Id*. at ¶ 9.)  The West Manchester Defendants argue, alternatively, that if Officer

---

[1] Plaintiff also brought a survival action claim due to the wrongful death of her son.  (*Id*. at ¶¶ 66-73.)

4

Jordan's use of deadly force was unreasonable, then he is entitled to qualified immunity. (*Id.* at ¶ 6.)  In response to Plaintiff's claims of municipal liability, the West Manchester Defendants argue that Plaintiff's *Monell* claim against West Manchester Township for failure to train must be dismissed both because Plaintiff's underlying constitutional claim against Officer Jordan fails and because Plaintiff failed to allege sufficient facts to support the claim. (*Id.* at ¶ 7.)  Lastly, the West Manchester Defendants argue that Plaintiff's request for punitive damages must be dismissed against Officer Jordan because Plaintiff did not establish the requisite malice, and against West Manchester Township and West Manchester Township Police Department because neither party can be liable for punitive damages as a matter of law. (*Id.* at ¶ 10.)

Defendants Officer Roosen, City of York and York City Police Department (collectively, the "York Defendants") also jointly filed a motion to dismiss for failure to state a claim on February 2, 2015 (Doc. 17) and a brief in support thereof on February 3, 2015 (Doc. 20).  In support of their motion, the York Defendants make substantially similar arguments to those made by the West Manchester Defendants with regard to the claims asserted against the York City Police Department as well as the claims for punitive damages asserted against all York Defendants. (*See id.*, pp. 3-5 of 6.)  The York Defendants do not, however, move to dismiss any of the individual claims asserted against Officer Roosen or the failure to train claim asserted against the City of York.

On February 23, 2015, Plaintiff filed two responses, one to the motion to dismiss filed by the York Defendants (Doc. 21) and the other in response to the motion to dismiss filed by the West Manchester Defendants (Doc. 22).  With respect

to the West Manchester Defendants, Plaintiff concedes that Defendant West Manchester Township Police Department "is an administrative arm of [Defendant] West Manchester Township and not a separate legal entity,"[2] (*id*. at p. 5 of 12), but argues that she properly pleaded the remainder of her claims (*id*. at pp. 5-12 of 12). With respect to the York Defendants, Plaintiff argues that punitive damages may be awarded against Defendant Officer Roosen if she can be prove that Officer Roosen fired the fatal shot, and that, in any event, his conduct was at least reckless under the circumstances.[3] (Doc. 21 at pp. 5-6 of 6; *see* Doc. 22 at pp. 11-12 of 12.)

The York Defendants filed a reply on March 3, 2015 (Doc. 25), and the West Manchester Defendants filed a reply on March 6, 2015 (Doc. 29). Thus, this matter has been fully briefed and is ripe for consideration.

## II.        **Legal Standard**

The motions to dismiss filed by both the York Defendants and the West Manchester Defendants challenge Plaintiff's complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). A Rule 12(b)(6) motion tests the sufficiency of the complaint against the pleading requirements of Rule 8(a), which requires that a

---

[2] Plaintiff appears to make the same concession with regard to the York City Police Department in response to the York Defendants' motion to dismiss. (Doc. 21, p. 5 of 6.) For purposes of this motion, the court assumes that Plaintiff's references to "West Manchester Township" and "West Manchester Township Police Department" in section II.A of her reply brief are typographical errors and that Plaintiff intended this to read "City of York" and "York City Police Department." (*Id*.)

[3] Plaintiff once again appears to have a typographical error in her reply brief, stating in support of her claim for punitive damages that Officer Roosen's conduct constitutes excessive force in violation of the Fourth Amendment, rather than reckless or callous indifference to a federally protected right of another. (Doc. 21 at p. 6 of 6.) For purposes of this motion, the court will assume that Plaintiff intends to put forth the same argument in support of punitive damages against Officer Roosen that she put forth in her reply to the West Manchester Defendants' motion to dismiss with regard to Officer Jordan. (Doc. 22 at pp. 11-12 of 12).

complaint contain a short and plain statement of the claim showing that the pleader is entitled to relief "in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S 41, 47 (1957)). While a complaint need not contain detailed factual allegations, it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).

Thus, when adjudicating a motion to dismiss for failure to state a claim, the court must view all of the allegations and facts in the complaint in the light most favorable to the plaintiff, and must grant the plaintiff the benefit of all reasonable inferences that can be derived therefrom. *Kanter v. Barella*, 489 F.3d 170, 177 (3d Cir. 2007) (quoting *Evancho v. Fisher*, 423 F.3d 347, 350 (3d Cir. 2005)). However, the court need not accept inferences or conclusory allegations that are unsupported by the facts set forth in the complaint. *See Reuben v. U.S. Airways, Inc.*, 500 F. App'x 103, 104 (3d Cir. 2012) (quoting *Iqbal*, 556 U.S. at 678); *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009) (stating that district courts "must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions").

Ultimately, the court must determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief." *Iqbal*, 556 U.S. at 679; *see also Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993). The "plausibility standard" requires "more than a sheer possibility" that a defendant is liable for the alleged misconduct. *Reuben*, 500 F. App'x at 104 (citing *Iqbal*, 556 U.S. at 678). Rather, the complaint

must show the plaintiff's entitlement to relief with its facts. *Steedley v. McBride*, 446 F. App'x 424, 425 (3d Cir. 2011) (citing *Fowler*, 578 F.3d at 211). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)) (alterations in original). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. at 678 (citing *Twombly*, 550 U.S. at 555).

To evaluate whether allegations in a complaint survive a Rule 12(b)(6) motion, the district court must initially "tak[e] note of the elements a plaintiff must plead to state a claim." *Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010) (alteration in original) (citation omitted). Next, the court should identify allegations that "are no more than conclusions" and thus, "not entitled to the assumption of truth." *Id*. Lastly, "where there are well-pleaded factual allegations, the court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief." *Id*.

A complaint "may not be dismissed merely because it appears unlikely that the plaintiff can prove those facts or will ultimately prevail on the merits." *Phillips v. County of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008) (citing *Twombly*, 550 U.S. at 588 n.8). Rule 8 "'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element[s]." *Id*. at 234 (quoting *Twombly*, 550 U.S. at 545).

**III.**      <u>**Discussion**</u>

Plaintiff brings her claims primarily pursuant to Section 1983 of Title 42 of the United States Code.  Section 1983 offers private citizens a means to redress violations of federal law committed by state officials.  *See* 42 U.S.C. § 1983.  The statute provides, in pertinent part, as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

*Id.*  "Section 1983 is not a source of substantive rights, but merely a method to vindicate violations of federal law committed by state actors." *Pappas v. City of Lebanon*, 331 F. Supp. 2d 311, 315 (M.D. Pa. 2004) (citing *Gonzaga Univ. v. Doe*, 536 U.S. 273, 284-85 (2002)).  To establish a claim under this section, a plaintiff must demonstrate that: (1) the conduct complained of was committed by persons acting under color of state law; and (2) the conduct violated a right, privilege, or immunity secured by the Constitution or laws of the United States.  *Harvey v. Plains Twp. Police Dep't*, 421 F.3d 185, 189 (3d Cir. 2005) (quoting *West v. Atkins*, 487 U.S. 42, 48 (1988)).

Because the state law claims against Officers Roosen and Jordan are either dependent on or derivative of the Section 1983 claims against them, and because all claims against the Municipal Defendants are dependent upon survival of the claims against Officers Roosen and Jordan, the court will address the claims against the officers first.

A.   **Officers Roosen and Jordan**

1.   **Excessive Force**

Plaintiff claims that Officer Roosen, or, alternatively, Officer Jordan violated her son's Fourth Amendment right to be free from unreasonable seizures by fatally shooting him.  "To state a claim for excessive force as an unreasonable seizure under the Fourth Amendment, a plaintiff must show that a 'seizure' occurred and that it was unreasonable." *Estate of Smith v. Marasco,* 318 F.3d 497, 515 (3d Cir. 2003) (quoting *Abraham v. Raso,* 183 F.3d 279, 288 (3d Cir.1999)).  "There can be no question that apprehension by the use of deadly force is a seizure subject to the reasonableness requirement of the Fourth Amendment." *Williams v. Papi*, 30 F. Supp. 3d 306, 312 (M.D. Pa. 2014) (quoting *Tennessee v. Garner,* 471 U.S. 1, 7 (1985)).  Thus, the only remaining question is whether the seizure of Bonilla was reasonable.

"The test of reasonableness under the Fourth Amendment is whether under the totality of the circumstances, 'the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivations.'" *Kopec v. Tate*, 361 F.3d 772, 776 (3d Cir. 2004) (quoting *Graham v. Connor,* 490 U.S. 386, 397 (1989)).  "Thus, if a use of force is objectively unreasonable, an officer's good faith is irrelevant; likewise, if a use of force is objectively reasonable, any bad faith motivation on the officer's part is immaterial." *Estate of Smith*, 318 F.3d at 515 (citing *Abraham,* 183 F.3d at 289).  Factors that a court should consider in determining whether the force was objectively reasonable are "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively

resisting arrest or attempting to evade arrest by flight." *Id.* (citing *Graham*, 490 U.S. at 396).  Additional factors to consider are "the duration of the action, whether the action takes place in the context of effecting an arrest, the possibility that the suspect may be armed, and the number of persons with whom the police officers must contend at one time." *Kopec*, 361 F.3d at 777 (citation omitted).  As the Third Circuit has explained:

> An excessive force claim must be evaluated 'from the
> perspective of a reasonable officer on the scene, rather than
> with the 20/20 vision of hindsight' and 'must embody the
> allowance for the fact that police officers are often forced
> to make split-second judgments – in circumstances that are
> often tense, uncertain, and rapidly evolving – about the
> amount of force that is necessary in a particular situation.'

*Rivas v. City of Passaic*, 365 F.3d 181, 198 (3d Cir. 2004) (quoting *Graham,* 490 U.S. at 396-97).

The West Manchester Defendants argue in support of their motion to dismiss that Officer Jordan was objectively reasonable in using deadly force and therefore did not violate Bonilla's Fourth Amendment rights.  (Doc. 19 at pp. 7-9 of 23; Doc. 29 at pp. 5-7 of 9.)  The question of reasonableness with regard to the use of force under the Fourth Amendment, however, is typically one that is left for the jury. *Rivas*, 365 F.3d at 198 (citing *Abraham*, 183 F.3d at 290).  While not every case will make it all the way to the jury because a district court may, after resolving all factual disputes in favor of the plaintiff, find for defendants at the summary judgment stage, *Estate of Smith*, 318 F.3d at 516 (citation omitted), "it is surely premature to expect

the [c]ourt to make such a resolution at the motion to dismiss stage, when the only issue before it is to determine whether [p]laintiff['s c]omplaint alleges facts that '*plausibly* give rise to an entitlement for relief.'" *Williams*, 30 F. Supp. 3d at 312 (quoting *Connelly v. Steel Valley Sch. Dist.*, 706 F.3d 209, 212 (3d Cir. 2013)).

In the complaint, Plaintiff alleged that Bonilla dropped his gun after being struck in the left thigh with a bullet, hobbled approximately sixty-five feet without firing any additional gunshots, fell to his knees and raised his hands as if to surrender, and then collapsed face down in the grass before either Officer Roosen or Officer Jordan fired the fatal shot.  (Doc. 1, ¶¶ 26-34.)  It is, at the very least, plausible on the face of the complaint that the officer responsible for firing the fatal shot on Bonilla either knew or believed that Bonilla was unarmed and attempting to surrender at the time deadly force was used.  A jury presented with such facts may very well find that the use of deadly force in such a situation was indeed unreasonable and a violation of Bonilla's Fourth Amendment rights.  Accordingly, Plaintiff's Section 1983 claims against Officers Roosen and Jordan will not be dismissed.

## 2.   **Qualified Immunity**

The West Manchester Defendants further argue that, should the court refuse to dismiss Plaintiff's Fourth Amendment excessive force claim against Officer Jordan by finding that he acted reasonably, then, alternatively, the claim should be dismissed because Officer Jordan is entitled to qualified immunity.[4]  (Doc. 18, ¶ 6.)

---

[4]  The York Defendants fail to include an argument based on qualified immunity on behalf of Officer Roosen in their motion to dismiss or brief in support thereof (*see generally* Docs. 17 and 20), and instead first address the issue in their reply brief (*see* Doc. 25, pp. 2-4 of 5).  For purposes of this

(continued...)

Qualified immunity operates to "protect officers from the sometimes 'hazy border between excessive and acceptable force.'" *Carswell v. Borough of Homestead*, 381 F.3d 235, 242 (3d Cir. 2004) (quoting *Saucier v. Katz*, 533 U.S. 194, 206 (2001)). An officer is entitled to qualified immunity when the officer makes a reasonable mistake as to what the law requires of him in a particular situation, *Saucier*, 533 U.S. at 205, and will be denied qualified immunity only where he has violated "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982) (citations omitted). In determining whether to grant qualified immunity, the court must determine (1) if the plaintiff has alleged sufficient facts to make out a violation of a constitutional right and (2) whether that right was clearly established. *Saucier*, 533 U.S. at 201. "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Id*. at 202. That the officer's actions were unconstitutional must be "beyond debate." *Ashcroft v. al-Kidd*, 131 S. Ct. 2074, 2083 (2011).

Although it is imperative to resolve immunity issues at the earliest possible stage of litigation, the Third Circuit has cautioned that "it is generally unwise to venture into a qualified immunity analysis at the pleading stage as it is necessary to develop the factual record in the vast majority of cases." *Newland v. Reehorst*, 328 F. App'x 788, 791 n.3 (3d Cir. 2009); *see also Curley v. Klem*, 298

---

[4](...continued)
motion, and because the court finds against the York Defendants on this issue, the court will deem the qualified immunity argument as timely raised, especially in light of Plaintiff having responded to substantially the same argument which was timely asserted by the West Manchester Defendants.

F.3d 271, 278 (3d Cir. 2002) ("[F]actual disputes often need to be resolved before determining whether the defendant's conduct violated a clearly established constitutional right.").  Indeed, a qualified immunity determination may even be premature at the summary judgment stage because, while "it is for the court to decide whether an officer's conduct violated a clearly established constitutional right, . . . the existence of disputed, historical facts material to the objective reasonableness of an officer's conduct will give rise to a jury issue."  *Id*. (citations omitted).

The present case is one of the "vast majority of cases" in which a determination of qualified immunity is inappropriate at the pleading stage.  When viewing the facts in the light most favorable to Plaintiff, the complaint alleges a plausible violation of Bonilla's Fourth Amendment rights through the use of excessive force.  As this court has previously stated, "the protections of the Fourth Amendment are sufficiently clear that [the officers] should have known that shooting [the decedent] to death violated those protections."  *Williams*, 30 F. Supp. 3d at 314. The question therefore becomes, once again, whether the officer responsible for firing the fatal shot was objectively reasonable in doing so.  Because there are unresolved issues of historical fact material to the reasonableness of Officer Roosen's and Officer Jordan's actions, including if and when they knew Bonilla was unarmed or had surrendered, it is premature at the motion to dismiss stage for the court to determine that either Officer Roosen or Officer Jordan is entitled to qualified immunity as a matter of law.

### 3.   State Law Claims

The court will now turn to the state law claims against Officers Roosen and Jordan.

### a. __Assault and Battery__

Under Pennsylvania law, an assault is "an intentional attempt by force to do an injury to the person of another, and a battery is committed whenever the violence menaced in an assault is actually done, though in ever so small a degree, upon the person." *Renk v. City of Pittsburgh*, 641 A.2d 289, 293 (Pa. 1994) (citation omitted). "In making a lawful arrest, a police officer may use such force as is necessary under the circumstances to effectuate the arrest. The reasonableness of the force used in making the arrest determines whether the police officer's conduct constitutes an assault and battery." *Id.* As discussed above, there are questions of fact that need to be resolved in order to determine whether Officers Roosen and Jordan acted reasonably when fatally shooting Bonilla and, therefore, Plaintiff's excessive force claim will not be dismissed. Accordingly, Plaintiff's claim for assault and battery against Officers Roosen and Jordan will likewise survive the instant motion.

### b. __Wrongful Death and Survival Actions__

"Wrongful death and survival actions are not substantive causes of action; rather, they provide a vehicle through which plaintiffs can recover for unlawful conduct that results in death." *Williams v. City of Scranton*, Civ. No. 3:10-CV-388, 2013 WL 1339027, *13 n.7 (M.D. Pa. Apr. 1, 2013) (quoting *Sullivan v. Warminster Twp.*, 765 F. Supp. 2d 687, 707 (E.D. Pa. 2011)). The unlawful conduct alleged by Plaintiff in her complaint is assault and battery by Officers Roosen and Jordan. Because Plaintiff's claims for assault and battery survive the instant motion to dismiss, the court will likewise permit the wrongful death and survival claims to move forward.

### B.    Municipal Defendants[5]

Plaintiff asserts claims against the Municipal Defendants pursuant to Section 1983 for failure to properly train Officers Roosen and Jordan in the use of deadly force.  (Doc. 1, ¶¶ 36-40, 44-48.)  "Municipalities and other local government entities may not be held liable under [Section] 1983 for the acts of their employees under a theory of *respondeat superior* or vicarious liability."  *Horton v. City of Harrisburg*, Civ. No. 1:06-CV-2338, 2009 WL 2225386, *3 (M.D. Pa. July 23, 2009) (citing *Ashcroft*, 556 U.S. at 676); *see also Colburn v. Upper Darby Twp.*, 946 F.2d 1017, 1027 (3d Cir. 1991).   A municipality may be found liable under Section 1983, however, "where the municipality *itself* causes the constitutional violation at issue."  *City of Canton v. Harris*, 489 U.S. 378, 385 (1989) (citing *Monell v. New York City Dept. of Soc. Servs.*, 436 U.S. 658, 694-95 (1978)).

To properly assert a claim for municipal liability under *Monell*, a plaintiff must "identify a municipal 'policy' or 'custom' that caused the plaintiff's injury."  *Board of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 403 (1997).  "To satisfy the pleading standard, [Plaintiff] must identify a custom or policy, and specify what exactly that custom or policy was."  *McTernan v. City of*

---

[5] Both the West Manchester Defendants and the York Defendants have moved to dismiss all claims against their respective police departments, asserting that they are merely administrative arms or subdivisions of their respective municipalities (Doc. 19, p. 6 of 23; Doc. 20, pp. 3-4 of 6), and Plaintiff has conceded this point (*see* Doc. 22, p. 5 of 12; Doc. 21, p. 5 of 7).  The court agrees that the police departments are not proper parties.  *See Martin v. Red Lion Police Dep't.*, 146 F. App'x 558, 562 n.3 (3d Cir. 2005) ("[T]he Red Lion Police Department, as the sub-division of defendant Red Lion Borough through which the Red Lion Borough fulfills its policing functions, was not a proper defendant in an action pursuant to 42 U.S.C. § 1983."); *Bonenberger v. Plymouth Twp.*, 132 F.3d 20, 25 n.4 (3d Cir. 1997) ("As in past cases, we treat the municipality and its police department as a single entity for purposes of [S]ection 1983 liability.") (citation omitted).  As such, the Section 1983 claims for municipal liability against West Manchester Township Police Department and York City Police Department will be dismissed, and the court will analyze these claims as against only Defendants West Manchester Township and the City of York.

*York*, 564 F.3d 636, 658 (3d Cir. 2009) (citation omitted).  "Policy is made when a 'decisionmaker possess[ing] final authority to establish a municipal policy with respect to the action' issues an official proclamation, policy, or edict."  *Andrews v. City of Phila.*, 895 F.2d 1469, 1480 (3d Cir. 1990) (citing *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481 (1986) (alterations in original).  Meanwhile, "an act performed pursuant to a 'custom' that has not been formally approved by an appropriate decisionmaker may fairly subject a municipality to liability on the theory that the relevant practice is so widespread as to have the force of law."  *Bryan Cnty.*, 520 U.S. at 403.

Municipalities may only be held liable for Section 1983 violations for failure to train their police officers "where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact."  *Canton*, 489 U.S. at 388.  "Failure to adequately screen or train municipal employees can ordinarily be considered deliberate indifference only where the failure has caused a pattern of violations."  *Berg v. County of Allegheny*, 219 F.3d 261, 276 (3d Cir. 2000).  However, "in a narrow range of circumstances, a violation of federal rights may be a highly predictable consequence of a failure to equip law enforcement officers with specific tools to handle recurring situations" and "could justify a finding that [the] policymakers' decision not to train the officer reflected 'deliberate indifference.'"  *Bryan Cnty.*, 520 U.S. at 409.  In such a situation, a showing of a pattern of violations is not necessary to establish municipal liability.

The Supreme Court has articulated the possibility for single-incident liability under a failure to train *Monell* claim.  In *Canton*, the Supreme Court stated that "the need to train officers in the constitutional limitations on the use of deadly

17

force can be said to be 'so obvious,' that failure to do so could properly be characterized as 'deliberate indifference' to constitutional rights." *Canton*, 489 U.S. at 390 n.10 (internal citation omitted).  Here, Plaintiff concedes that she is not basing her claims for municipal liability on a pattern of violations, but rather on single-incident liability stemming from the highly predictable and recurrent situation that police officers face in determining whether to use deadly force when effecting an arrest.  (Doc. 22 at p. 9 of 12.)

In response, the West Manchester Defendants rely on *Connick v. Thompson*, 131 S. Ct. 1350 (2011), to argue that municipal liability in a failure to train case "applies only where police officers have *no knowledge whatsoever* concerning the lawfulness of deadly force."  (Doc. 29, p. 9 of 10 (emphasis supplied).)  However, *Connick* does not limit the applicability of the single-incident liability laid out in *Canton* to situations where there has been no training whatsoever. Rather, the *Connick* Court relied on its reasoning in *Canton*, wherein the Court framed the issue as being whether the "training program is adequate[,]" and specifically contemplated a situation in which "the need for **more or different training** is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need."  *Canton*, 489 U.S. at 390 (emphasis added).  The court reads nothing in the *Connick* opinion that contradicts this language from *Canton* or restricts the potential for single-incident liability only to cases where there is no training at all.

Here, the court is confronted with the proposition of the untrained officer from *Canton*.  Plaintiff alleged in her complaint that "West Manchester Township . . .

failed to properly train its police officers in the use of deadly force and that such failure to properly train resulted in an official policy and/or custom." (Doc. 1, ¶ 45.)  More specifically, Plaintiff alleged that township's training protocol was insufficient, occurred with insufficient frequency, and was not followed up with testing to ensure that officers "understood the training and retained training knowledge." (*Id*. at ¶ 46.)  Plaintiff further alleged that this improper training resulted in the violation of Bonilla's Fourth Amendment rights and the loss of his life. (*Id*. at ¶¶ 47-48.)

The court recognizes the high burden of proof that a plaintiff must meet when alleging municipal liability based on a single incident rather than a pattern of violations. *See Connick*, 131 S.Ct. at 1366 (finding that the facts did not fall within the "narrow range of 'single-incident' liability hypothesized in *Canton* as a possible exception to the pattern of violations necessary to prove deliberate indifference in [Section] 1983 actions alleging failure to train."); *see also Kean v. Henry*, Civ. No. 09-CV-0567, 2012 WL 646053, *6 (E.D. Pa. Feb. 28, 2012) ("It would be hard to overstate the narrowness of this 'rare' liability category.").  However, for purposes of the instant motion, the court finds that, through the above facts, Plaintiff has met her pleading burden with regard to her failure to train claim against Defendant West Manchester Township.  Plaintiff has put West Manchester Township on notice of the claim against it and the grounds upon which it rests, and has alleged facts which could, at least plausibly, establish that West Manchester Township's failure to properly train Officer Jordan in the use of deadly force occurred through a policy or custom which amounted to deliberate indifference towards Bonilla's federally protected rights.  Accordingly, this claim will not be dismissed.

## C.   <u>Punitive Damages</u>

Plaintiff also asserts claims for punitive damages in connection with her Section 1983 claims against both the Municipal Defendants and Officers Roosen and Jordan. (*See* Doc. 1, ¶¶ 40, 43, 48, 51.) The Municipal Defendants separately moved to dismiss the punitive damages claims against them as being unavailable at law, and the court agrees.[6] It is well-settled that "a municipality is immune from punitive damages under 42 U.S.C. § 1983." *Smith v. Borough of Dunmore*, 633 F.3d 176, 183 (3d Cir. 2011) (citing *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271 (1981)). Therefore, Plaintiff's claims for punitive damages against the Municipal Defendants will be dismissed.

As to individual police officers, they are likewise immune to claims for punitive damages for claims brought pursuant to Section 1983 to the extent the claims are brought against them in their official capacities. *See Lakits v. York*, 258 F. Supp. 2d 401, 408 (E.D. Pa. 2003) ("[Section] 1983 claims against public servants in their official capacities are, in effect, suits against the government entity itself.") (citing *Brandon v. Holt*, 469 U.S. 464, 471 (1985) ("a judgment against a public servant 'in his official capacity' imposes liability on the entity that he represents...")). Therefore, to the extent that any of Plaintiff's claims for punitive damages are brought against Officers Roosen and Jordan in their official capacities as police officers, those claims are also dismissed.

However, claims for punitive damages pursuant to Section 1983 that are brought against police officers in their individual capacities are recoverable. Punitive damages, therefore, may be awarded to the extent that Plaintiff can establish that Officer Roosen and/or Officer Jordan acted with a "reckless or callous disregard of, or

---

[6] The court notes that Plaintiff failed to address the Municipal Defendants' arguments regarding punitive damages.

indifference to, the rights or safety of others." *Savarese v. Agriss*, 883 F.2d 1194, 1204 (3d Cir. 1989) (quoting *Smith v. Wade*, 461 U.S. 30, 56 (1983)); *see also Brennan v. Norton*, 350 F.3d 399, 428-29 (3d Cir. 2003).  Such awards of punitive damages should be reserved, however, for "cases in which the [officer]'s conduct amounts to something more than a bare violation justifying compensatory damages or injunctive relief." *Cochetti v. Desmond*, 572 F.2d 102, 106 (3d Cir. 1978).

Plaintiff has alleged that Officers Roosen and Jordan acted recklessly by using deadly force against Bonilla.  It is plausible that through discovery Plaintiff may establish facts that would support Plaintiff's assertions that Officer Roosen and/or Officer Jordan not only acted unreasonably, but also recklessly or callously with regard to Bonilla's safety.  Therefore, Plaintiff's claims for punitive damages against Officers Roosen and Jordan in their individual capacities will not be dismissed.

## IV.        <u>Conclusion</u>

Plaintiff has met her pleading requirement by alleging facts in her complaint that state a plausible claim that Officer Roosen and Officer Jordan violated Bonilla's Fourth Amendment rights by unlawfully seizing him through the use of excessive force.  The facts supporting the claim for excessive force also establish Plaintiff's state law claims for assault and battery and her  wrongful death and survival actions, and leave open the possibility of recovery of punitive damages against Officer Roosen and/or Officer Jordan in their individual capacities.  Therefore, none of the claims asserted against Officers Roosen and Jordan will be dismissed.  Plaintiff has also plead facts in the complaint that state a plausible claim against West Manchester Township and the City of York for failure to train their police officers in the use of

deadly force, and those claims will also not be dismissed.  Plaintiff's claims against West Manchester Township Police Department and York City Police Department, however, fail as a matter of law, as do Plaintiff's punitive damages claims against West Manchester Township and the City of York, and, therefore, those claims will be dismissed.

       An appropriate order will issue.

s/Sylvia H. Rambo
SYLVIA H. RAMBO
United States District Judge

Dated:  April 2, 2015.